**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILLY RAY WHALEY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No. 1:14-cv-01719-SMS<br><br>ORDER REVERSING AND REMANDING AGENCY'S DENIAL OF BENEFITS |

Plaintiff Billy Ray Whaley seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DI") under Title II of the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act"). The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument. After a review of the record and applicable law, the Court reverses the Commissioner's determination to deny benefits and remands this action to the Administrative Law Judge ("ALJ") for further consideration.

　　　　I.　　PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A. *Procedural History*

Plaintiff applied for DI on January 13, 2012, alleging disability due to depression and bad knees beginning on March 1, 2011. AR 196. The Commissioner denied the claims on April 6,

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

1

2012, and upon reconsideration, on November 20, 2012. AR136. Plaintiff then filed a timely request for a hearing. AR 151.

Plaintiff appeared and testified before an ALJ, Judson Scott, on January 23, 2014. Also at the hearing were Plaintiff's counsel, medical experts Drs. Ronald P. Houston and Anthony Francis, and an impartial vocational expert ("VE"). AR 32. In a written decision dated February 13, 2014, the ALJ found Plaintiff was not disabled under the Act. AR 20. On September 3, 2014, the Appeals Council denied review of the ALJ's decision, which thus became the Commissioner's final decision, and from which Plaintiff filed a timely complaint. AR1; Doc. 1.

B. *Factual Background*

The Court will not recount in detail all the facts of this case, discussing only what is raised on appeal and relevant for purposes of this order.

1. Plaintiff's Work History

On February 16, 2012, Plaintiff completed a Work History Report, indicating he had worked two jobs before he became unable to work. He was owner of a plastering company from 1990 to 2010 and foreman for a demolition crew from September 19, 2010 to March 11, 2011. As owner of the plastering company, his daily tasks included overseeing work done by others, collecting money, and dealing with contractors and homeowners. Plaintiff did not use machines, tools or equipment. Instead, the job required use of technical knowledge or skills and report writing. Additionally, the job required Plaintiff to walk for two hours, stand for two hours, sleep/nap for three hours, and write, type or handle small objects for one hour per day. He lifted fifty pounds at most, but frequently lifted less than ten pounds. He spent two hours a day supervising five to thirty individuals. As foreman for a demolition crew, Plaintiff oversaw the safety of workers and drafted reports daily. Along with technical knowledge or skills, the job required use of machines, tools or equipment. He lifted fifty pounds at most, but frequently lifted less than ten pounds. Each day, Plaintiff walked for

two hours, stood for two hours, sat for three hours, and wrote, typed or handled small objects for one hour. He spent eight hours a day supervising three to ten individuals. AR 221-223.

### 2. Medical Evidence

Records showed Plaintiff received physiological, psychological, and psychiatric care from VA locations in Bakersfield and West Los Angeles. Dr. Ekram Michiel, the lead psychiatrist at the VA Hospital in Bakersfield, CA, treated Plaintiff as early as 2010. AR 312. Reports (approximately 12) from June 2010 through June 2013 generally indicated Plaintiff denied hallucinations and illusions, reported no suicidal or homicidal ideations, or delusional disorder. Plaintiff did, however, report having paranoid persecutory ideas in September 2012 and April 2013. In June 2010, April 2011, November 2011, and December 2011, Dr. Michiel generally rated fair Plaintiff's attention and concentration, short and long term memory, and insight/judgment. In December 2011, however, he rated Plaintiff's short and long term memory as slightly impaired. AR 273-310, 529-534.

In April and July 2012, Dr. Michiel rated Plaintiff's attention and concentration as impaired, but that rating changed to fair in September and December. Also in September and December, Dr. Michiel rated impaired Plaintiff's immediate recall. Overall, Plaintiff's short and long term memory and insight/judgment were rated fair in 2012. In January, April, and June 2013, Dr. Michiel rated fair Plaintiff's attention and concentration, short and long term memory, and insight/judgment. But his immediate recall skill was rated impaired. In April 2013, he complained of talking to himself and seeing "things at the corner of [his] eye." AR 343-400, 466, 532.

On August 30, 2013, Dr. Alexis M. Valos, a psychologist from Bakersfield, examined Plaintiff at the request of the Department of Social Services (DSS). During the evaluation, Plaintiff complained of depression, anxiety, knee pain, and some confusion. He also reported symptoms of posttraumatic stress disorder after an assault in 2013. Dr. Valos noted Plaintiff's history of illegal drugs, alcohol, and nicotine use, and that Plaintiff was consuming alcohol on a regular basis.

AR 473-474, 476.

Based on the requested psychological tests, a mental status examination, clinical interview, personal history and accompanying information, Dr. Valos diagnosed Plaintiff with: (1) moderate, recurrent major depressive disorder; (2) generalized anxiety disorder; (3) dementia NOS;[2] (4) posttraumatic stress disorder; and (5) borderline intellectual functioning.  On the Wechsler Adult Intelligence Scale, Plaintiff earned an IQ of 75, falling in the low range of intellectual ability compared to peers of the same age.  On the Wechsler Memory Scale, Plaintiff scored in the extremely low range of auditory and visual memory.  AR 477-479.

Dr. Valos concluded that Plaintiff had social and emotional impairments which indicated he might have difficulty in handling stresses, pressures, and changes in routine related to day-to-day work activities.  The impairments could interfere with his relationship with co-workers, supervisors and the public in a work-like environment.  Plaintiff's daily activities and social functioning also appeared vulnerable to episodes of deterioration in a work-like environment.  Dr. Valos further concluded that Plaintiff's memory and cognitive skills were impaired.  He could follow basic directions and carry out simple tasks involving focused attention, concentration and memory skills, but not more complex tasks.  And he might have difficulty adapting to the cognitive demands related to day-to-day work activities.  AR 479.

On September 13, 2013, Dr. Valos completed a medical source statement, which addressed Plaintiff's mental ability to do work-related activities.  Therein, he indicated Plaintiff possessed moderate restrictions in: understanding, remembering, carrying out complex instructions, making judgements on completed work-related decisions, and interacting appropriately with the public, supervisors, and co-workers.  Plaintiff had marked restrictions in responding appropriately to usual work situation and to changes in a routine work setting.  Dr. Valos opined that Plaintiff's below

---

[2] "NOS" means "Not Otherwise Stated."  *What Does NOS mean?*, New Health Guide (February 22, 2016, 3:13 PM); http://www.newhealthguide.org/What-Does-Nos-Mean.html.

4

average memory skills may be related to his "drug and alcohol use," or were a product of the assault he experienced in June 2013, which resulted in loss of consciousness. AR 480-481.

### 3. Dr. Ronald P. Houston's Testimony

Dr. Houston, a clinical psychologist, testified at the hearing. Before asking Dr. Houston's opinion, the ALJ read out loud a letter dated December 27, 2013, from Dr. Michiel. In sum, the letter stated: Plaintiff was under the care of Dr. Michiel, who saw him on a bi-monthly basis, sometimes more frequently. Plaintiff also attended weekly therapy sessions. At twenty years old, Plaintiff had his first panic attack and thereafter began feeling depressed and anxious. He tried to cope by self-medicating with alcohol, attending AA meetings, receiving therapy, and taking psychotropic medication. His depression and anxiety caused him to stop working and he consequently lost his plastering business. He had a Global Assessment Functioning of 48.[3] Plaintiff's symptoms preclude his ability to work with others or maintain gainful employment. He cannot maintain attention and concentration to carry out job instructions. AR 68-69.

After reading Dr. Michiel's letter, the ALJ then asked Dr. Houston what he believed to be Plaintiff's medically determinable impairments. Dr. Houston opined that Plaintiff had major depressive disorder, anxiety disorder, organic mental disorder, and borderline intellectual functioning. Dr. Houston believed "there should've been a substance abuse diagnosis included" for consideration of substance addiction disorder in Dr. Michiel's evaluation. Referring to the medical record, Dr. Houston also expressed "disagreement" with Dr. Valos concerning the Wechsler Memory Scale scores. Dr. Houston opined that the lack of variation in scores usually warranted considerations of malingering or a lack of effort. AR 71-74.

---

[3] "Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. A GAF between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999).

According to Dr. Houston, Plaintiff was capable of multiple-step tasks, certainly "more than simple, routine, repetitive" tasks. Specifically, "[i]f it is non-verbal, visual work, he'd be capable of performing complex work." But if it is "verbally loaded," he could perform "simple, routine, repetitive work, anywhere from one to three steps." Further, Plaintiff is limited to occasional contact with the public. With regard to work place stress, Dr. Houston believed "that in the absence of drug or alcohol, there would be a very mild limitation; but as long as [Plaintiff's] an alcoholic, you would have to say it's more of a moderate limitation." Considering Plaintiff's anxiety, he should be in a low stress work environment. Plaintiff could, however, maintain ordinary workplace attendance. AR 75-79.

Responding to questions by Plaintiff's counsel, Dr. Houston stated the record did not show Plaintiff would have difficulty concentrating and staying on task during a normal work week. Dr. Houston also disagreed with Dr. Valos's finding that Plaintiff had a marked impairment in his ability to respond appropriately to usual work situations and to changes in a routine work setting. AR 83-84.

4. <u>Vocational Expert Testimony</u>

Lizet Campos, the VE, also testified at the hearing. She classified Plaintiff's past work as a plastering supervisor and a grading supervisor, both with a light exertional level and SVP[4] of 7.

The ALJ posed a number of hypotheticals for the VE. He first directed the VE to assume a person of the same age, education and work experience as Plaintiff, who had the functional and mental capacity as discussed by Drs. Houston and Francis at the hearing. He asked the VE whether such person would be able to perform any of Plaintiff's past work. The VE opined that such an

---

[4] "'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.' *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991)." *Bray v. Comm'r of Soc. Sec. Admin.* 554 F.3d 1219, 1230 (9th Cir. 2009).

individual would be able to perform the job of a plastering or grading supervisor as defined in the Dictionary of Occupational Titles (DOT), but "not as he performed them." Such person could also perform the job of an inspector and tester (SVP 3), an assembler of toys and sporting equipment (SVP 3), and an assembler (SVP 2). AR 111-113.

5. <u>ALJ's Decision</u>

A claimant is disabled under Titled II if he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of no less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To encourage uniformity in decision making, the Commissioner has promulgated regulations prescribing a five-step sequential process which an ALJ must employ to evaluate an alleged disability.[5]

The ALJ here employed the five-step sequential process and found Plaintiff was not disabled under the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2011. At step two, Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees, obesity, generalized anxiety disorder, borderline intellectual functioning, major depressive disorder, alcohol induced mood disorder, alcohol dependence in early partial remission, and degenerative disc disease of the lumbar. At step three,

---

[5] The ALJ must determine: "(1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (quotations, citations and footnote omitted); 20 C.F.R. §§ 404.1520 (2011). Residual functional capacity is "the most" a claimant "can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) (2011). "The claimant carries the initial burden of proving a disability in steps one through four of the analysis. However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Based on all of the impairments, Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b), except he: can stand and walk a total of six to eight hours with normal breaks; can frequently crouch, crawl, kneel or stoop, occasionally climb ladders, ropes and scaffolds; cannot manipulate foot controls; cannot work at unprotected heights, extreme heat or cold, around hazardous moving machinery and heavy industrial vibrations; can perform simple and repetitive to complex tasks if the work is nonverbal; can perform simple, repetitive, one to three step tasks if the work requires significant verbal instruction or interaction; can work with others on an unrestricted basis but can interact with the public only occasionally; and can withstand normal workplace stress if he abstains from alcohol.  At step four, the ALJ found Plaintiff was capable of performing past relevant work as a plastering or grading supervisor as it was actually performed.  Consequently, the ALJ found Plaintiff was not disabled from March 1, 2011 through the date of his decision.  AR 14-19.

## II.  DISCUSSION

### A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the

Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted). "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010). But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Nevertheless, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

Plaintiff seeks reversal of the Commissioner's decision and an order for payment of benefits on two grounds: (1) that the ALJ erred in finding Plaintiff could perform his past work as a plastering and grading supervisor where their requirements exceeded his RFC, and (2) the ALJ's reasons for rejecting the opinions of Drs. Michiel and Valos were unsupported by substantial evidence.

1. Past Relevant Work

The ALJ here found Plaintiff capable of performing past work as a plastering supervisor and grading supervisor as it was actually performed. When recounting the VE's testimony, the ALJ stated the VE testified that Plaintiff's RFC "would allow him to perform these jobs as they are actually performed." AR 19. But the VE did not testify as such. Instead, the VE testified that Plaintiff could perform his jobs as defined in the DOT, but "not as he performed them." AR 111. He opined that Plaintiff could perform his past jobs as generally performed and not, according to the ALJ's description, as actually performed.[6] Nevertheless, Plaintiff contends he cannot perform his

---

[6] Social Security Ruling 82-61 provides, in relevant part:

past work as actually or generally performed because the demands and job duties are inconsistent with the ALJ's RFC finding. Doc. 14, pp. 12-19. Recognizing the ALJ's error in recounting the VE's testimony, the Commissioner avers Plaintiff has not established a conflict between his RFC and the requirements of Plaintiff's past work as generally performed. Doc. 22, pp. 7-10.

At step four of the five-step sequential process, "claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e)." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citation omitted). But "the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62." *Id.* He must make "specific findings as to the claimant's residual functional capacity, *the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work*. SSR 82–62." *Id.* at 845 (emphasis added). And "[w]hile the claimant is the primary source for vocational documentation, the ALJ may utilize a [VE] to assist in the step-four determination[.] 20 C.F.R. § 404.1560(b)(2)." *Ocegueda v. Colvin*, --- F. App'x ---, 2015 WL 6916100, at *1 (9th Cir. Nov. 10, 2015) (No. 13-56463) (citation omitted).[7]

The ALJ made specific findings regarding Plaintiff's RFC, but stopped short of explaining the physical and mental demands of his past work, and their relation to the RFC. His explanation consisted of about two sentences referencing the VE's testimony. This, of course, was inadequate. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1167 (9th Cir. 2008) ("[T]he ALJ

---

> Under sections 404.1520(e) . . . of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
>
> 1. The *actual* functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as *generally* required by employers throughout the national economy.

SSR 82-61 (emphasis added).

[7] This unpublished decision is citable under Rule 32.1 of the Federal Rules of Appellate Procedure. *See also* 9th Cir. R. 36–3(b).

10

always has a duty to make the requisite factual findings to support his conclusion at step four. Otherwise, the court has no basis on which to review the agency's decision.") (internal quotation and citations omitted); *see e.g., McGuffey v. Astrue*, 247 F. App'x 903, 905 (9th Cir. 2007) ("ALJ failed to make the necessary findings regarding the mental and physical demands of [his] past work . . . or to consider with sufficient care the interaction of the limiting effects of [his] impairments(s) and the physical and mental demands of his [past relevant work] to determine whether [he] can still do that work") (internal quotation and citation omitted) *and Garnica v. Astrue*, 238 F. App'x 254, 255 (9th Cir. 2007) ("the ALJ did not discuss any of the *specific* mental and physical demands intrinsic to [her] three prior jobs . . . nor did he explain how her retained functional capacity satisfied those specific demands. We find this insufficient to satisfy the ALJ's responsibilities under Ruling 82–62.") (emphasis in original). The ALJ therefore erred at step four in failing to make the requisite factual findings. And because the Court will not speculate as to the ALJ's reasoning process, remand is warranted.[8]

2. <u>Drs. Ekram Michiel and Alexis M. Valos</u>

Plaintiff argues the ALJ erroneously rejected the opinions of Drs. Michiel and Valos with the opinion of a non-examining physician, Dr. Houston.[9] Doc. 14, pp. 19-23. The Commissioner counters that no error occurred because the ALJ correctly found the opinions of Drs. Michiel and Valos conflicted with the record as a whole. Doc. 22, pp. 10-13.

---

[8] Plaintiff's reliance on the Medical-Vocational Guidelines under 20 C.F.R., Part 404, Subpart P, Appendix 2, Table No. 2, is misplaced. The guidelines are helpful in cases where a claimant cannot perform relevant past work. *See* 20 C.F.R. § 404.1569 (2011) ("We apply these rules in cases where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work."); *see also Moules v. Heckler*, 600 F. Supp. 37, 41 (N.D. Cal. 1984). The ALJ's failure to make the required factual findings is not determinative, at this point, that Plaintiff cannot perform his past work.

[9] Plaintiff's brief states the "[t]he ALJ utilized the testimony of nonexamining physician Anthony Francis, M.D., to reject Drs. Michiels and Valos [*sic*] opinion," yet quotes from the ALJ's written decision which discussed Dr. Houston's opinion. Doc. 14, pg. 20.

11

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (footnote and citation omitted). To reject a treating or examining physician's opinion which is contradicted by another physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 830-831. If the treating or examining physician's opinion is uncontradicted, clear and convincing reasons must be given. *Id.*

"The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted). "But . . . the Commissioner's rejection of the opinion of a treating or examining physician, [may be] based *in part* on the testimony of a nontreating, nonexamining medical advisor." *Id.* (citations omitted) (emphasis in original). Of course an "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quotations and citation omitted).

The record does not reflect that Dr. Houston, unlike Drs. Michiel and Valos, treated or examined Plaintiff, respectively. That fact, however, did not preclude the ALJ from relying on Dr. Houston's opinion, so long as it was not the sole reason for rejecting the opinions of Drs. Michiel and Valos. *See Morgan*, 169 F.3d at 602. But in this case, the ALJ did not discuss reasons beyond Dr. Houston's contradicting opinions in rejecting the opinions of Drs. Michiel and Valos. Indeed, the ALJ stated that "neither Dr. Valos' [*sic*] [n]or Dr. Michiel's opinions are compatible with the claimant's record as a whole." AR 19. But he provided no specific explanations following this

broad statement. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (concluding that the ALJ's broad and vague reasons for rejecting a treating psychologist's opinion was flawed).

The ALJ's discussion of Plaintiff's treatment notes does not support his rejection of Drs. Michiel's and Valos's opinions. Specifically, the ALJ noted they revealed no decompensated or professed suicidal ideations, and contained little support of Plaintiff's testimony about hearing voices and visual hallucinations. AR 19. A review of the record confirms the ALJ's findings. With the exception of the September 2012 and April 2013 notes, which indicated Plaintiff suffered paranoid persecutory ideas, Dr. Michiel's reports indicated Plaintiff denied hallucinations and illusions, and reported no suicidal or homicidal ideations, or delusional disorder. And there is only one instance—April 2013—of Plaintiff complaining about seeing things out of the corner of his eye. But these treatment notes do not, alone, weaken Dr. Michiel's opinion that Plaintiff's symptoms precluded him from working with others or maintaining gainful employment, and that he cannot maintain attention and concentration to carry out job functions. Nor do they belie Dr. Valos's opinion regarding Plaintiff's difficulties in a work-like environment and cognitive skills. The treatment notes supported the ALJ's overall conclusion about the severity of Plaintiff's mental impairments, but not the rejection of Drs. Valos's and Michiel's opinions.

Additionally, the ALJ stated, "[t]he assessments of the state agency consultants who reviewed the claimant's records and opined that he was largely unimpaired mentally are given some weight. Those assessments do not give as much credit to the claimant's subjective allegations of impairment[.]" AR 19. But those assessments suffer from the same deficiencies: they are broad and it is unclear how they undermine Drs. Michiel's and Valos's opinions.

The ALJ therefore did not properly reject the opinions of Drs. Michiel and Valos. To the extent the ALJ could have provided specific and legitimate reasons for rejecting their opinions, he failed to do so. And the Court cannot affirm on reasons not discussed by the ALJ. *See Orn v.*

13

*Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citation omitted).  By rejecting the opinions of a treating and examining physician based solely on the opinion of a non-treating and non-examining physician, the ALJ therefore erred.  *See Morgan*, 169 F.3d at 602.  Such error was not harmless where he relied on the latter's opinions in making the RFC determination.

C.  *Remand*

"We have discretion to remand for further proceedings or to award benefits.  If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.  Where the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate."  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citations and quotations omitted).  Under the circumstances, the Court finds remand appropriate so that the ALJ may properly make the factual findings required under SSR 82-62.  *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.") (quotations omitted).  The ALJ is therefore directed to reassess the step-four analysis and to explain his rejection of the opinions of Dr. Michiel and Valos in light of this opinion, and if necessary, proceed to step five.

Because further administrative proceedings would be useful, the Court does not apply the "credit-as-true" rule as urged by Plaintiff.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (explaining that the district court need only consider the credit-as-true rule if it determines that the record was fully developed and no outstanding issues remain).

## III.  CONCLUSION

Accordingly, the Court GRANTS Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  This action is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion. The Clerk of this Court shall enter judgment in favor of Plaintiff, Billy Ray Whaley, and against the Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 29, 2016**              **/s/ Sandra M. Snyder**
                                         UNITED STATES MAGISTRATE JUDGE